Opinion by JUDGE TERRY
¶ 1 Respondent, Christian Wayne Hardesty, appeals an order of the district court to involuntarily administer medications to him so that he may be rendered competent to be tried for the crimes of which he is accused. In this opinion, we address the application of Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), to the district court's order, and we affirm the order.
I. Background
¶ 2 Hardesty was sent to the Colorado Mental Health Institute in Pueblo (CMHIP) after he was found incompetent to proceed in two criminal cases that were filed against him, and he remains there. While he has been at CMHIP, Hardesty has refused to take antipsychotic medications, and the People petitioned to have such medications involuntarily administered to him to render him competent to proceed in the criminal cases.
¶ 3 After holding a hearing and receiving testimony from Hardesty and his treating physician, the district court found that the following facts had been proved by clear and convincing evidence: Hardesty is facing serious criminal charges of robbery and two counts of third degree assault, but has been found incompetent to proceed.
• Hardesty suffers from a mental illness and has refused to take medications prescribed by his treating physician.
• The criminal charges cannot be resolved until Hardesty's competency is restored.
• Hardesty is unlikely to be restored to competency without the prescribed medications.
*556 • The medications prescribed by the treating physician are medically appropriate for the treatment of Hardesty's mental disorder.
• The prescribed medications are unlikely to have side effects that will interfere significantly with Hardesty's ability to assist his defense counsel at trial.
• The medications will not cause Hardesty's criminal trials to be unfair.
• Involuntary administration of medications is necessary to further the interests of the state in bringing Hardesty to trial on the criminal charges against him.
• There is no less intrusive treatment option which will allow Hardesty to be restored to competency.
¶ 4 In light of these findings, the district court granted the People's petition to involuntarily administer antipsychotic medications to Hardesty.
II. Discussion
¶ 5 Hardesty argues that the People failed to establish the legal requirements for involuntary administration of medications under Sell . He also argues that the evidence was insufficient to support the order for involuntary treatment. We disagree with both arguments.
A. Applicable Law and Standards of Review
¶ 6 In Sell, the Supreme Court stated:
the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.
539 U.S. at 179, 123 S.Ct. 2174. The Court identified the following factors that the trial court must consider in determining whether to order involuntary administration of medications to render a criminal defendant competent to stand trial:
¶ 7(1) The defendant must be facing "serious criminal charges." Id . The court must consider the facts of an individual case in evaluating the state's interest in prosecution. Id . at 180, 123 S.Ct. 2174. In evaluating this factor, the court should keep in mind that
[t]he Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security.... [T]he Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.
Id . The Supreme Court identified "special circumstances" that may lessen the importance of the state's interest, such as the defendant's confinement in an institution for the mentally ill, and presentence confinement. See id .
¶ 8(2) The court must conclude that involuntary medication will significantly further the state's interest in prosecution. Id. at 181, 123 S.Ct. 2174. The relevant governmental interest at stake is "the interest in rendering the defendant competent to stand trial ." Id. The inquiry is whether the government's asserted interest in treatment is " 'sufficiently important to overcome the individual's protected interest in refusing' " treatment. United States v. Bradley, 417 F.3d 1107, 1113 (10th Cir.2005) (quoting Sell, 539 U.S. at 183, 123 S.Ct. 2174 ).
¶ 9(3) The court must conclude that administration of the drugs is substantially likely to render the defendant competent to stand trial. Sell, 539 U.S. at 181, 123 S.Ct. 2174.
¶ 10(4) The court must conclude that the administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. Id.
*557 ¶ 11(5) The court must conclude that involuntary medication is necessary to further the identified governmental interests. Id.
¶ 12(6) The court must consider less intrusive means for administering the drugs-such as a court order to the defendant backed by the contempt power-before considering more intrusive methods. Id .
¶ 13(7) The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. Id .
¶ 14(8) The court must conclude that administration of the drugs is medically appropriate, i.e., "in the patient's best medical interest in light of his [or her] medical condition," considering that "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." Id.
¶ 15 As to the first factor identified above, the seriousness of a crime is normally determined as a matter of law. See People v. Deroulet, 48 P.3d 520, 524 (Colo.2002). However, because Sell requires a review of factual information in the record as to whether criminal charges are "serious," Sell, 539 U.S. at 180, 123 S.Ct. 2174, we conclude that this determination presents a mixed question of law and fact. We will review the district court's findings of disputed fact for clear error, and apply the de novo standard of review to the application of the legal standard to the historical facts. See People v. Gennings, 808 P.2d 839, 844 (Colo.1991). A finding of fact is clearly erroneous when there is no support for it in the record. Continental Western Insurance Co. v. Jim's Hardwood Floor Co., 12 P.3d 824, 828 (Colo.App.2000).
¶ 16 We agree with the Tenth Circuit that the inquiry with respect to the second factor-whether involuntary medication will significantly further the state's interest in prosecution-is whether the government's asserted interest in treatment is sufficiently important to overcome the individual's protected interest in refusing treatment, and that this presents a question of law which we review de novo. See Bradley, 417 F.3d at 1113.
¶ 17 We also agree with the Tenth Circuit that an order for involuntary medication to render a defendant competent to stand trial implicates a "vital constitutional liberty interest," id. at 1114, that the remaining Sell factors must "depend upon factual findings and ought to be proved by the government by clear and convincing evidence," and that such findings of fact are to be reviewed for clear error, id. at 1113-14 (citing United States v. Gomes, 387 F.3d 157, 160 (2d Cir.2004) ); see U.S. Const. amend. V (government may not deprive any person of liberty without due process of law).
B. Analysis
¶ 18 Because Hardesty challenges only the first, second, and fifth Sell factors listed above, we limit our review to the application of those factors.
1. Governmental Interests and Seriousness of the Charged Crimes
¶ 19 Hardesty's first argument implicates the first and second Sell factors listed above. He contends that because the charges against him are "a low level" class 4 felony (robbery) and two class 1 misdemeanors (two counts of third degree assault), they do not rise to the level of seriousness contemplated by Sell that would justify involuntary medication. He further argues that there are insufficient facts in the record to support findings of fact or conclusions of law that would sustain the important government interest element of Sell . As discussed above, we review the district court's determination as to the seriousness of the charged crimes as a mixed question of law and fact, but we review de novo whether involuntary medication will significantly further the state's interest in prosecution. Based on our review, we reject Hardesty's contentions.
¶ 20 We are mindful of Sell 's admonition that courts are to "consider the facts of the individual case in evaluating the Government's interest in prosecution," 539 U.S. at 180, 123 S.Ct. 2174. We conclude that the factual information before the district court *558 was sufficient for it to determine the seriousness of the offenses, and that it properly did so here.
¶ 21 The record shows that Hardesty faces the following accusations: that he entered a convenience store, where he tried to shoplift some energy drinks; when he was confronted, he became aggressive and "threw a punch," hitting one of the store employees; and "there was a struggle," after which police were called and he was arrested. The district court stated that the underlying criminal charge was a "[s]hoplifting that resulted in an assault and as a result then [became] a [r]obbery." The court concluded that the charged offenses were serious crimes and that the government had an important interest in bringing these serious charges to trial.
¶ 22 Whether a crime is "serious" may be determined "by considering the harm caused or threatened to the victim or to society and the culpability of the offender." Deroulet, 48 P.3d at 524 (regarding " 'grave or serious' crime [s]" for purposes of sentencing).
¶ 23 The crime of robbery is defined in section 18-4-301(1), C.R.S.2014, which states: "A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery." Robbery has been determined to be a "serious" crime for purposes of sentencing proportionality review, see Deroulet, 48 P.3d at 524, and subjects the defendant to a presumptive sentence ranging from two to six years of imprisonment plus three years of mandatory parole. § 18-1.3-401(1)(a)(V)(A), C.R.S.2014; see also United States v. Evans, 404 F.3d 227, 237 (4th Cir.2005) (applying Sell, and stating, "[I]t is appropriate to focus on the maximum penalty authorized by statute in determining if a crime is 'serious' for involuntary medication purposes."); accord United States v. Green, 532 F.3d 538, 548 (6th Cir.2008) (A focus on the maximum statutory penalty "avoids an arbitrary determination of seriousness that could befall appellate courts given the breadth of potential criminal charges, the prevailing attitudes of a particular community as it relates to a specific crime, the particularities of any given case, as well as any number of other subjective factors that could influence this determination, and ultimately, lead to unavoidable disparity among the circuits regarding what constitutes a 'serious' crime.").
¶ 24 Relying on these statutory and case law indicators of seriousness, as well as the particular facts alleged here, see Sell, 539 U.S. at 180, 123 S.Ct. 2174, we conclude that robbery as charged here is a "serious" crime for purposes of determining the appropriateness of an order of involuntary medication to restore Hardesty to competency. His conduct allegedly escalated into physical violence and could have resulted in physical injury to a store employee. See also id . ("The Government's interest in bringing to trial an individual accused of a serious crime is important[,] ... whether the offense is a serious crime against the person or a serious crime against property."); Green, 532 F.3d at 548 ("[W]e simply cannot conclude that only 'violent' crimes are 'serious' for purposes of this analysis. There are any number of criminal behaviors that do not involve crimes of violence that are 'serious' matters.").
¶ 25 Because of our conclusion, we need not separately determine whether the misdemeanor assault charges against Hardesty were also "serious" for this purpose.
¶ 26 We further conclude that, given the seriousness of the robbery charge, the government had a significant interest in restoring Hardesty to competency so that he could be tried for that charged crime.
2. Whether Involuntary Medication is Necessary to Further the Government's Interest in Prosecution
¶ 27 Hardesty's next assertion implicates the fifth Sell factor listed above. He argues that no evidence was presented to prove that ordering involuntary medication was necessary to further the state's interest in prosecution. We review this contention for clear error, see Bradley, 417 F.3d at 1113-14, and we disagree with Hardesty.
¶ 28 The district court found that Hardesty was unlikely to be restored to competency without the medications. The court also found that Hardesty "is mentally ill and he doesn't have any insight into the mental illness, *559 and he's incapable of making informed treatment decisions and incompetent to effectively participate in treatment decisions."
¶ 29 These findings were made by clear and convincing evidence, and are supported by the testimony of Dr. Richard Pounds, the supervising staff psychiatrist on the CMHIP ward to which Hardesty was admitted. Pounds testified that Hardesty has been diagnosed with "the broad diagnosis of psychosis not otherwise specified"; has expressed "some delusional beliefs" regarding "religious issues, Satanism, [and] issues with the Bible"; believes that he is a Mafia Godfather; and believes that "his involvement with the Sicilian Mafia has some bearing on his legal case." Pounds testified that Hardesty's primary medical provider and the doctor in charge of ongoing competency evaluations believe that there is no hope for Hardesty to make progress toward competency until his delusions can be addressed. He said, "if anything, things [with Hardesty] have gotten worse over time," despite his participation in competency restoration group sessions, and "the only way we have to address [his] delusions [is with] antipsychotic medications."
¶ 30 Because there is factual support in the record for the district court's findings, those findings are not clearly erroneous. The People met their burden to establish by clear and convincing evidence that involuntary administration of antipsychotic drugs was necessary to further the important government interest in bringing Hardesty to trial on at least one serious criminal charge.
3. Liberty and Due Process Rights
¶ 31 Given our conclusion that the contested portions of the Sell test were met, we reject Hardesty's final contention that the district court's order violated his liberty and due process constitutional rights.
III. Conclusion
¶ 32 The order is affirmed.
JUDGE FURMAN and JUDGE LICHTENSTEIN concur.